HECHT vs. KOEGEL and KOEGEL.

Creditor's bill to set aside a conveyance by the debtor, on the ground that the conveyance was made without consideration, and to defeat creditors. Decree accordingly.

On final hearing on pleadings and proofs.

*Mr. J. H. Lippincott,* for complainant.

*Mr. J. F. Randolph,* for Christian Koegel.

THE CHANCELLOR.

This is a creditor's bill. The complainant alleges that the defendant, Gottlob Koegel, being indebted to him in the sum of about $350, for goods sold and delivered between January, 1870, and April 21st, 1871, conveyed to his brother, the defendant, Christian Koegel, all his property, personal and real, with intent to hinder and defeat his creditors. The complainant recovered a judgment for his claim in the Circuit Court of Hudson county, on the 26th of December, 1871, and issued execution thereon, which was levied on the hereinafter mentioned land. The proof shows that about the 1st of August, 1871, Gottlob was the owner of a dwelling-house, in which he lived, and which was upon a tract of four lots of land belonging to him, at West New York, in the county of Hudson, and of valuable personal property, which he had in his possession there, consisting of horses, wagons, cows, swine, &c., &c. He was indebted to various persons to the amount in the aggregate of about $1500, but

was unable to meet his obligations. He was in trouble. He had an encounter with a person in New York, which resulted, (but without his fault, it appears,) in the death of his assailant, and he had met with considerable losses in his business. By the advice of his brother Christian he absconded from his creditors, and thereupon Christian took possession of his personal property, removing it from the premises of Gottlob by night. Just before he absconded he executed a mortgage on his real estate before mentioned, to Christian, for $1500, which was ante-dated April 1st, 1871. An attachment having been issued against Gottlob by a creditor named Klein, and levied on the personal property, Christian paid the claim and removed the attachment. Part of this property Christian sold, and the rest of it he returned to Gottlob, on the latter's return to this state, which took place about the 15th of the same month of August. Gottlob then executed a bill of sale to Christian for part of the personal property, for the consideration, as expressed in the instrument, of $700, and with his wife executed a deed of conveyance to Christian for the real estate; the consideration expressed in the deed being $2600. That property was subject to a mortgage given by Gottlob, April 1st, 1870, to Henry F. Maackens, for $1000, and interest. The complainant alleges that the conveyance of the real and personal property to Christian was without consideration, and to defeat creditors. Gottlob swears that it was so, that it was made at the suggestion of Christian, who proposed to hold the property until a settlement could be effected with the creditors, and that the mortgage of $1500 was given to enable Christian to make such settlement with the proceeds of it. Gottlob states, that after his return, Christian proposed the conveyance of the real estate and the execution of the bill of sale, in view of Gottlob's inability to manage his affairs, and that he executed the bill of sale and deed for the land to Christian, accordingly. Christian, on the other hand, swears that the mortgage was given to him to secure a debt due to him from Gottlob, for money advanced by him to Gottlob at various times during a

number of years, from the time when Gottlob first arrived in this country, and that the bill of sale and the conveyance of the land were made on a sale of the property by Gottlob to him, made in view of Gottlob's intention to return to Europe. He testifies that he was to pay the money for the goods, and that the consideration of the deed was made up of the Maackens mortgage of $1000, his mortgage of $1500, and the amount of a note for $100, endorsed by him for Gottlob. He utterly repudiates the idea that he took the property, real or personal, or any of it, on the understanding that he was to pay the debts of Gottlob, or any of them, and distinctly and expressly swears that he made no such agreement, and that there was no such understanding. Opposed to this statement, is not only the evidence of Gottlob, but also that of his wife, who testifies that when Christian was taking the personal property away, she was weeping, and he, to quiet her, told her that in four or five days he would bring the property all back to her, when he should have settled up with the creditors. And in this she is corroborated by two disinterested witnesses; one of whom says that on another occasion Christian made a like statement to her in his presence, and added, that his brother should not lose a penny on his account. The complainant also swears to Christian's admission to him that the personal property had only been transferred to him to make an easy settlement with Gottlob's creditors, and that it was still Gottlob's; and that the mortgage of $1500 was made so that Gotlobb's creditors could not attach the property, and so Gottlob would be safe. One of Christian's witnesses, William Kraft, testifies that about a week after Christian took possession of the personal property, Christian and Gottlob came to his house to sell him a wagon, part of the property, and that he bought the wagon and gave a note for it, payable to Christian's order, which the latter handed over to Gottlob, and that he made the note to Christian's order because Gottlob said Christian " had the things to sell." Besides all this, Christian is contradicted by his answer in the cause, in which, after stating that the consider-

ation of the bill of sale and deed was the mortgage of $1500, and $100 money lent by him to Gottlob, he adds, that he, " as a further consideration for said deed and bill of sale, agreed and assumed to pay, and did pay with his own money, certain debts then due and owing by Gottlob to various persons, amounting, together, to the sum of $1150, or thereabouts." And he further " insists " that the bill of sale was " executed and delivered to him in consideration of certain debts of Gottlob, at that time paid or assumed by him." It appears from the evidence, it may be observed, that the debts he has paid amount to but little if anything more than the amount received by him from the sale of the personal property sold by him.   To establish the debt of $1500, he swears that on the 5th of January, 1871, he and Gottlob had a settlement, in which the latter was found to owe him for borrowed money, and interest, $1500, including $75, which he says he then lent to Gottlob.   But he fails to give a credible account of this alleged settlement, and Gottlob denies it *in toto*.   Christian produces a written statement acknowledging the accounting, and that there was found due to Christian from Gottlob thereon, $1500, the signature to which the latter admits is genuine, but he denies that he signed that instrument.   An inspection of the document is sufficient to show that the signature and the statement were written at different times.   They are in different inks.   The signature may have have been given to Christian in blank for the purposes of the fraud they intended.   At all events it seems clear, that if the genuineness of the instrument be admitted, it was fictitious and intended merely to further the fraudulent design of, Christian and Gottlob.   The former is unable to account for the fact, that the amount of the alleged indebtedness, including interest, was exactly $1500.   He cannot state the items of the alleged loans beyond the amount of $875, and these are, as is the whole of the alleged indebtedness, expressly and explicitly denied by Gottlob.   Christian's account of the loss of his memorandum-book, in which, he says, he had set down the loans, is unworthy of credit.

My conclusion is, that the bill of sale and deed were both voluntary, and were made with intent to hinder and defeat the creditors of Gottlob, and ought to be set aside as fraudulent.